UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEMA GEORGE BEHNAM,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

Case No. 1:20-cv-12876

Honorable Thomas L. Ludington
United States District Judge

Honorable Kimberly G. Altman
United States Magistrate Judge

**OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S ORDER, (2) ADOPTING MAGISTRATE JUDGE'S ORDER, (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (5) AFFIRMING COMMISSIONER'S ORDER, AND (6) DISMISSING COMPLAINT WITH PREJUDICE**

This matter is before this Court upon Plaintiff's objection, ECF No. 31, to the Magistrate Judge's Report and Recommendation (R&R), ECF No. 30. Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), this Court has reviewed *de novo* those portions of the R&R to which Plaintiff has objected. Because substantial evidence supports the ALJ's findings, Plaintiff's objection will be overruled, the R&R will be adopted, Plaintiff's Motion for Summary Judgment will be denied, Defendant's Motion for Summary Judgment will be granted, the Commissioner's decision will be affirmed, and the case will be dismissed.

**I.**

Plaintiff Dema George Behnam brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. §§ 402(d), 423 for review of a final decision of the Commissioner of Social Security denying her application for Disabled Adult Child (DAC) benefits.

**A.**

Plaintiff has "complex congenital heart disease consisting of L-transposition of the great arteries, ventricular septal defect, and pulmonary stenosis, status post double switch operation, right Glenn anastomosis, and aortic valve replacement in 2002." ECF No. 16-7 at PageID.366. She underwent repeat aortic-valve replacement in 2009. *Id.* Her cardiologist urged her to seek care at the University of Michigan. *See* ECF No. 16-2 at PageID.114.

She regularly treated with the Pediatric Cardiology Clinic at Mott Children's Hospital after moving to Michigan from California. The Clinic's records reflect that she "was doing very well from a cardiovascular perspective" while taking Enalapril and Coumadine from August 2010 to August 2012. ECF No. 16-7 at PageID.366–91. An August 2011 CT scan of her chest indicated that Plaintiff was "a patient with congenital heart disease with previous surgery." *Id.* at PageID.408.

Plaintiff previously applied for supplemental security income (SSI) and was denied in October 2012. ECF No. 16-3 at PageID.122, 124. She did not appeal. *Id.* As of July 2013, when she turned 22, she had just completed a four-year undergraduate program at Saginaw State University. ECF No. 16-2 at PageID.107–08. She participated in a full-time master's program over the next two years while working parttime at a daycare and as a line cook. *Id.* She was about two semesters away from completing her master's program when her condition "worsened." *Id.* at PageID.107.

Her June 2013 records indicate that she "ha[d] been doing well" since her August 2012 visit, but that she was "a little more tired during mid-day since September [2012]." *See* ECF No. 16-14 at PageID.1292. A June 2013 echocardiogram showed that Plaintiff had a prosthetic neo-aortic valve with moderate stenosis, mild neo-aortic insufficiency, and dilated morphologic

left ventricle with at least moderately depressed systolic function. ECF No. 16-15 at PageID.1569. And an EKG showed levo-transposition of great arteries with ventricular inversion and ventricular septal defect. *Id.*

In addition to two heart aneurysms, she had open heart surgery in April 2017 to replace an artificial valve that became too small for her heart, as it was installed when she was 10 years old, with a valve from a pig's heart. ECF No. 16-2 at PageID.112.

**B.**

Plaintiff applied for DAC and SSI in November 2018. ECF No. 16-5 at PageID.227–46. Her SSI application was approved based on a finding that her heart condition and secondary asthma were disabling as of the application date. ECF No. 16-3 at PageID.151, 154. Her DAC application was denied because the evidence did not support a finding that her disability began before age 22. *Id.* at PageID.149. Then she timely requested an administrative hearing, held before Administrative Law Judge (ALJ) Janet L. Alaga-Gadigian on December 17, 2019. *Id.* at PageID.100–17.

In November 2019, Dr. Mark D. Norris of the University of Michigan Adult Congenital Heart Program authored a letter assessing Plaintiff's medical condition and physical abilities. ECF No. 16-16 at PageID.1723–24. Doctor Norris stated that if Plaintiff had been under his care since she turned 22 years old, he "would have placed limitations on her ability to lift and carry" and "would expect that her ability to walk would also be limited and require frequent rest." *Id.* at PageID.1723. Doctor Norris also noted that Plaintiff's "congenital cardiac condition is lifelong, and she has had physical limitations and reduced exercise capacity since birth." *Id.*

At the ALJ hearing, Plaintiff testified that when she reflected on the period before her twenty-second birthday, she realized that walking was more laborious for her than for her friends.

*Id.* at PageID.109. For example, she had to take five or six breaks just to walk across campus. *Id.* Further, a full day of classes became "difficult towards the end." *Id.* at PageID.110. She would get tired after sitting for a long time and would struggle with mental focus after a day of classes. *Id.* She would often experience heart palpitations while sitting in class. *Id.* at PageID.110–11. And she would become dizzy during light activities, like walking up stairs. *Id.* at PageID.111.

On January 2, 2020, ALJ Alaga-Gadigian issued an order finding Plaintiff not disabled as defined in the Social Security Act. *Id.* at PageID.82–98. Six months later, the Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. *Id.* at PageID.71–75. Plaintiff timely filed for judicial review of the final decision with this Court. ECF No. 1.

## C.

In October 2020, Plaintiff filed a complaint in this Court under 42 U.S.C. § 405(g).[1] ECF No. 1. Plaintiff argued that "the ALJ erred in rendering a decision that was not supported by substantial evidence and contains errors of law." *Id.* at PageID.3. Accordingly, Plaintiff requested this Court to "set aside the Commissioner's final decision; or in the alternative, remand this cause for further proceedings consistent with the Commissioner's regulations and Circuit law." *Id.* (cleaned up). This matter was referred to Magistrate Judge Kimberly G. Altman. ECF No. 4. The parties filed cross-motions for summary judgment. ECF. Nos. 23; 26.

On February 16, 2022, Judge Altman issued a Report and Recommendation, recommending that this Court (1) deny Plaintiff's Motion for Summary Judgment; (2) grant Defendant's Motion for Summary Judgment; and (3) affirm the Commissioner's decision. *See*

---

[1] Although this Court has jurisdiction over Plaintiff's claim, some scholars have interestingly raised the idea of "specialized courts" for "social security disability claims." *See, e.g.*, Akram Faizer & Stewart Harris, *Administrative Law Symposium Debate*, 8 BELMONT L. REV. 427, 454 (2021) (statement of Stewart Harris).

*generally* ECF No. 30. According to Judge Altman, Plaintiff had not demonstrated (1) that the ALJ erred at step five of the disability-determination process; (2) that the ALJ erred in evaluating the opinion evidence; or (3) that the ALJ erred in evaluating Plaintiff's subjective symptoms. *See id.* at 1808–18. Each of the ALJ decisions, Judge Altman found, were supported by substantial evidence. *See id.* at PageID.1818.

On February 18, 2022, Plaintiff filed an objection to the Report and Recommendation, arguing that Judge Altman erred in her second finding. *See* ECF No. 31. Two weeks later, Defendant responded to Plaintiff's objection. *See generally* ECF No. 32.

## II.

### A.

The Social Security Act[2] allows claimants to seek DAC benefits. Disabled Adult Child benefits are available "if such child was under a disability . . . at the time [s]he attained the age of 18 or if [s]he was not under such a disability . . . at such time but was under a disability . . . at or prior to the time [s]he attained . . . the age of 22." 42 U.S.C. § 402(d)(1)(G); *see* 20 C.F.R. § 404.350(a)(5). In substance, § 402(d) "provides that a child of an individual entitled to old age or disability insurance benefits is entitled to [DAC] Benefits if [s]he is under a disability (as defined by section 223(d) of the Social Security Act) which began before h[er] twenty-second birthday." *Jones v. Sec'y of Health & Hum. Servs.*, 896 F.2d 553, 553 n.1 (6th Cir. 1990) (unpublished table decision) (per curiam); *see Wallin v. Astrue*, No. 12-CV-0142-TOR, 2013 WL 209183, at * 2 (E.D. Wash. Jan. 17, 2013) (The "claimant must prove her disability began on or before her 22nd birthday.").

---

[2] For some discussion on the history and nuances of the Social Security Act, see generally Michele Johnson & Kristin Ware, *Medicaid Expansion by Any Other Name: Exploring the Feasibility of Expanded Access to Care in the Wake of* NFIB v. Sebelius, 1 BELMONT L. REV. 119 (2014).

The Social Security regulations outline a five-step process that the ALJ must use to determine whether a disabled adult child is entitled to DAC benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity (RFC); and (5) if not, whether based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006) (en banc).

The claimant bears the burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform work available in the national economy. *Id.*

**B.**

Applying the five steps, the ALJ found that Plaintiff was not disabled under the Act during the relevant period. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 22, 2013. ECF No. 16-2 at PageID.87. At Step Two, the ALJ found that Plaintiff had the severe impairment of complex congenital heart disease. *Id.* at PageID.88.

Importantly, at Step Three, the ALJ found that Plaintiff's impairment did not meet or medically equal a listed impairment. *Id.* To that end, the ALJ assessed Plaintiff's RFC, concluding that she was capable of performing "sedentary work as defined in 20 CFR 404.1567(a)," but:

      • Should have no exposure to extreme cold or heat;
      • Can have only occasional exposure to respiratory irritants;
      • Should have no exposure to workplace hazards;
      • Can occasionally climb ramps or stairs;
      • Can never climb ladders, ropes, or scaffolds;
      • Can only occasionally balance, stoop, kneel, and crouch; and
      • Can never crawl.

*Id.* at PageID.88–89.

At Step Four, the ALJ found that Plaintiff had no past relevant work. *Id.* at PageID.93. At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Plaintiff could perform the duties of a telephone quotation clerk (900,000 jobs nationally), final assembler (200,000 jobs nationally), and nut sorter (450,000 jobs nationally). *Id.* at PageID.93–94.

Ultimately, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, at any time prior to July 21, 2013, the date she attained age 22 (20 CFR [§] 404.350(a)(5) and 404.1520(g))." *Id.* at PageID.94 (emphases omitted).

## C.

Magistrate Judge Altman reviewed the order under 42 U.S.C. § 405(g). *See* ECF No. 30 at PageID.1806–08.

Section 405(g) provides, as relevant:

> The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered . . . . the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g). Thus, when reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made

pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

According to the Supreme Court, "Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *accord Rogers*, 486 F.3d at 241.

In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial-evidence standard is deferential, it is not trivial. This Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). After those detractions, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

But "a decision of the Commissioner will not be upheld [if] the SSA fails to follow its own regulations and [if] that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III.

Under Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If a party objects, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). The parties must state any objections with specificity within a reasonable time. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

Parties cannot "raise at the district court stage new arguments or issues that were not presented" *before* the magistrate judge's final report and recommendation. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

When reviewing a report and recommendation de novo, this Court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, this Court is free to accept, reject, or modify the Magistrate Judge's findings or recommendations. FED. R. CIV. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, No. 1:20-CV-11290, 2021 WL 4145771, at *2 (E.D. Mich. Sept. 13, 2021).

As discussed herein, this Court finds (1) that Magistrate Judge Altman did not err in finding that substantial evidence supported the ALJ's evaluation of the opinion evidence. Accordingly, this Court will overrule Plaintiff's objection, adopt the R&R, deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, affirm the Commissioner's order, and dismiss the Complaint with prejudice.

### IV.

The R&R recommends this Court find that "the ALJ did not err in the assessment of the opinion evidence" during Step Three. ECF No. 30 at PageID.1815. Plaintiff objects that the ALJ erred. ECF No. 31. This Court will adopt that recommendation.

**A.**

The R&R evaluated two medical opinions: one by Dr. Keith Camann and one by Dr. Mark Norris. The ALJ's evaluation of Dr. Camann's opinion is the focus of Plaintiff's objection.[3] *See* ECF No. 30 at PageID.1813–14 (citing ECF No. 16-2 at PageID.92).

Doctor Camann concluded that Plaintiff had symptoms of pain, loss of sensation, malaise, weakness, fatigue, and the ability to adapt to her limitations. ECF No. 16-3 at PageID.132. He also concluded that "one or more of [Plaintiff's] medically determinable impairment(s) (MDI(s)) [could] reasonably be expected to produce [her] pain or other symptoms." *Id.* at PageID.144.

On the other hand, Dr. Camann challenged Plaintiff's reporting about the severity of her symptoms. When asked whether Plaintiff's "statements about the intensity, persistence, and functionally limiting effects of the symptoms" were "substantiated by the objective medical evidence alone," Dr. Camann answered, "No." *Id.* at PageID.132.

In her objection, Plaintiff argues that the ALJ rejected Dr. Camann's medical opinion that Plaintiff's symptoms were consistent with the dizziness and fatigue that she reported. See ECF No. 31 at PageID.1823. She further argues that when an ALJ's RFC determination conflicts with a medical source opinion, he must explain why that opinion was not adopted. *See id.* at PageID.1821–22.

However, a full review of the ALJ's opinion reflects that the ALJ did not disagree with Dr. Camann's medical opinion. On the contrary, the ALJ not only adopted Dr. Camann's medical opinion but also agreed with Dr. Camann's assessment that Plaintiff overreported her symptoms.

---

[3] Plaintiff's only objection also contests Dr. Norris's opinion, but that part of the objection is subsumed within her objection to Dr. Camann's opinion. *See* ECF No. 31 at PageID.1825. Moreover, the R&R instructed the parties that "[a]ny objections must be labeled as 'Objection No. 1,' and 'Objection No. 2,' etc." ECF No. 130 at PageID.1819. In this way, Plaintiff did not properly raise her objection as to Dr. Norris.

Indeed, the point is made several times in the ALJ's order. *See* ECF No. 16-2 at PageID.88 ("I am not saying that she was without symptoms; I am saying that the level of her functioning during the relevant period was extremely high and totally inconsistent with disability through the DLI for this DAC claim."); *id.* at PageID.90 ("After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms."); *id.* at PageID.90 ("The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.").

However, to be clear that her finding of no disability would be the same even if Plaintiff reported her symptoms accurately, the ALJ assigned Plaintiff to be evaluated "at the sedentary exertional level"—which aided Plaintiff's claim—as opposed to being categorized as capable of medium or light work. *See id.* at PageID.92 ("However, as a precautionary measure and to account for the claimant's testimony that she experienced occasional dizziness and fatigue, the undersigned has conservatively limited the claimant to the sedentary exertional level (Hearing Testimony)."); C.F.R. § 404.1567.

Yet even giving Plaintiff a more favorable categorization, the ALJ ultimately concluded that she was not disabled during the relevant period. *See* ECF No. 16-2 at PageID.88.

### i.

"[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

The ALJ gave Dr. Camann's opinion less weight to credit Plaintiff's testimony about her symptoms but nevertheless assigned Plaintiff to the "sedentary work" classification under C.F.R. § 404.1567. In this way, the ALJ's explanation made a "logical bridge between the evidence and the result." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017).

For these reasons, the ALJ's decision was supported by substantial evidence.

## V.

Accordingly, it is **ORDERED** that Plaintiff's Objection, ECF No. 31, is **OVERRULED**.

Further, it is **ORDERED** that the Magistrate Judge's Report and Recommendation, ECF No. 30, is **ADOPTED**.

Further, it is **ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 23, is **DENIED**.

Further, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 26, is **GRANTED**.

Further, it is **ORDERED** that the Commissioner's final decision is **AFFIRMED**.

Further, it is **ORDERED** that the above-captioned case is **DISMISSED WITH PREJUDICE**

Dated: March 17, 2022                    s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge